STATE OF CONNECTICUT *v.* CHARLIE SENQUIZ
(AC 19587)

Foti, Mihalakos and Dranginis, Js.

Argued October 29, 2001—officially released March 12, 2002

*Martin Zeldis*, senior assistant public defender, with whom, on the brief, were *Pamela S. Nagy*, assistant public defender, and *Lynne Farrell* and *Martha Hansen*, certified legal interns, for the appellant (defendant).

*Jo Anne Sulik*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *James Killen*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Charlie Senquiz, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree and two counts of risk of injury to a child in violation of General Statutes §§ 53a-70 (a) (2)[1] and 53-

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

21 (1) and (2),[2] respectively.[3] On appeal, the defendant claims that the trial court improperly (1) rendered the judgment of conviction because it was not sufficiently proven that the alleged acts occurred in Connecticut, (2) admitted a redacted version of a videotaped police interview with the alleged child victim as constancy of accusation evidence, (3) permitted testimony in two separate instances on redirect examination of the victim that went beyond the scope of cross-examination and (4) failed to give a proper unanimity instruction to the jury. Because the evidence was sufficient and properly admitted in the discretion of the court and because the unanimity charge did not sanction a nonunanimous verdict, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Between October 1, 1995, and May 9, 1997, the defendant lived in New Britain with his girlfriend and her children, including the victim, as a family. While in New Britain, the family lived in three different residences. From September, 1995, through June, 1996, the family lived in their first residence in New Britain, and the victim attended third grade at a local elementary school. When the victim was living at that residence and attending third grade in New Britain, the defendant sexually assaulted her by having vaginal intercourse with her in a bathtub. Near the end of November, 1996,

[2] General Statutes (Rev. to 1997) § 53-21 provides: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

[3] Specifically, the state alleged in the information that the defendant committed the charged crimes "in the city of New Britain, on various dates between and including October 1, 1995, and May 9, 1997 . . . ."

the family moved to a new residence in New Britain, and the victim, then in the fourth grade, transferred to another school in town. The defendant sexually assaulted the victim during the process of moving from the first residence to the second residence by performing cunnilingus on her when the two returned to the first residence to pick up some items. The family moved again to a third residence in New Britain in February, 1997. At that residence, the defendant sexually assaulted the victim by attempting to have vaginal intercourse with her on a couch.

In May, 1996, the department of children and families (department) began monitoring the family. In April, 1997, after a one year period of frequent observation, the department decided to close the family's case file. The victim made no mention of sexual abuse during the department's span of observation although she did make other unrelated complaints. About two weeks later, the victim, who was then ten years old, reported to her teacher and then to a department investigator, as well as to the police and others, that the defendant had been sexually assaulting her for the past two years, with the most recent incident having occurred within the last two weeks. The victim and her siblings were subsequently removed from their home and placed into separate foster care homes.

On January 20, 1999, after a jury trial in which these facts came to light, the jury returned a verdict against the defendant, finding him guilty of all three counts. On March 10, 1999, the court sentenced the defendant to a total effective sentence of thirty years of incarceration, execution suspended after twenty years, with fifteen years of probation. On May 20, 1999, this appeal followed. Additional facts and procedural history will be provided as necessary.

I

We address the defendant's sufficiency of evidence claim first because this claim, "if successful, would necessitate the entry of a judgment of acquittal . . . ." (Citation omitted.) *State* v. *Murray*, 254 Conn. 472, 478, 757 A.2d 578 (2000). The defendant argues that the court improperly convicted him on each count because the evidence at trial was not sufficient to prove that the alleged acts occurred in Connecticut and, therefore, the court lacked territorial jurisdiction in this case.[4] The defendant contends that the victim's testimony so intermingled alleged acts in Connecticut with alleged acts in New York (New York evidence) that it cannot constitute sufficient evidence of acts occurring in Connecticut. Alternatively, the defendant argues that a new trial should be granted because, even if there was sufficient evidence to convict him for acts occurring in Connecticut, the jury was likely to have used prejudicially the New York evidence in arriving at its verdict. We do not agree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumula-

---

[4] Our courts have territorial jurisdiction to adjudicate over criminal charges concerning acts occurring within Connecticut. General Statutes § 51-1a (b); see *State* v. *Ross*, 230 Conn. 183, 195, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). The state charged the defendant with crimes occurring in Connecticut. We need not address the defendant's jurisdictional claim any further than to point to our conclusion in this part of the opinion that the jury had sufficient evidence regarding acts occurring in Connecticut on which to base, beyond a reasonable doubt, its verdict on each count. See generally *State* v. *Beverly*, 224 Conn. 372, 618 A.2d 1335 (1993). Given such evidence, the court clearly had territorial jurisdiction.

tive force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000). Moreover, "[e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

Construing the evidence in the light most favorable to upholding the verdict, we conclude that the jury reasonably could have found that the defendant had sexually touched and assaulted the victim in her various residences in New Britain. Although originally arguing to the contrary, the defendant concedes in his reply brief that he misread the transcript of the victim's testimony and that, therefore, the victim testified that the defendant had had vaginal intercourse with her in a bathtub and, by virtue of the same concession, performed cunnilingus on her in the first of the victim's New Britain residences.[5] The victim also testified that

---

[5] The defendant's reply brief provides in relevant part: "[T]he state argues that defendant's claim that the 'bathtub' incident may have happened [when the victim] was in first grade . . . is without merit . . . because the defendant has misread [the victim's] testimony. The defendant maintains that [the victim's] testimony is confusing and contradictory in many respects, but he acknowledges that a fair reading of the relevant transcript citations demonstrate[s] that the state's point is well taken. Specifically, the house . . . appears to be the *first* of three New Britain houses that [the victim] lived in . . . ." (Emphasis in original.) The defendant's original argument was that the victim's testimony during direct examination did not place the

the defendant sexually assaulted her on the couch in her third New Britain residence. These events constitute sufficient evidence for the jury's verdict, and, as a result, this court cannot undermine the jury's determination. While the victim may have sometimes put forth confused, apparently forgetful, or even contradictory testimony, it was solely up to the jury to determine the weight of each part of the victim's testimony. The jury, therefore, reasonably could have concluded that the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt. For these reasons, we conclude that the defendant's claim is unavailing.

The following additional facts are relevant to our determination that the defendant, in his alternative claim, has failed to show that the admission of evidence of events in New York was prejudicial. Before trial and at points during the trial, the defendant objected to the admission of any testimony related to criminal acts allegedly occurring in New York. The defendant argued that introducing such evidence would be confusing and prejudicial, that it would cause jurisdictional problems, that it would be difficult to cross-examine witnesses concerning such evidence and that it would implicate the unanimity of a jury verdict against the defendant. The court ordered and the parties agreed that questions posed to the victim would be framed in such a way as to limit her testimony to events occurring in Connecticut.

Outside the presence of the jury, the state indicated clearly and repeatedly to the victim that she should limit her testimony to Connecticut events occurring while she was in the third and fourth grades. When questioning of the victim resumed, the state focused

bathtub or the cunnilingus incidents within any of her homes in New Britain. In his reply brief, the defendant admits that he misread the victim's testimony and that her testimony actually connected the incidents to her first residence in New Britain.

the victim's testimony on the appropriate time frame. On cross-examination, defense counsel asked the victim if she ever bled when the defendant sexually assaulted her, and she answered that she had in "New York on the couch." Defense counsel asked the court immediately to instruct the jury, and the court ordered that the answer be stricken and for the jury to disregard it.

Later in the trial, over the objection of defense counsel, a ten minute redacted videotape made up of six short segments of the victim's interview with a police officer on May 22, 1997, was admitted as constancy of accusation evidence and was played for the jury. The redacted videotape showed the victim stating that the defendant sexually harassed her from when she was eight until she was ten years old. The victim stated that this meant that the defendant raped her. In an effort to better understand the victim's allegations, the police officer then pursued what the victim meant by the word "rape" in a number of exchanges shown on the videotape. During one of those exchanges, the police officer had the victim write down what "rape" meant to her, and he read it aloud afterward.[6] Relating the victim's

---

[6] A review of the unedited videotape reveals that the exchange shown in this portion of the redacted videotape does indeed follow references to an alleged sexual assault in New York, which the jury does not see on the redacted videotape. Nevertheless, the victim's account of the New York incident was interrupted by the police officer's request that she write down what the word "rape" meant to her. This subset of the larger exchange is the only part of that exchange that the jury did see. Furthermore, the police officer had asked the victim earlier in the interview, before discussing the alleged New York events, to tell him what "rape" meant to her. In this overall context, the victim's definition of "rape" did not refer to any specific New York incident, even though it was juxtaposed with a description of alleged New York events. Instead, the victim's written definition of "rape" consisted of an explanation of her basic allegations against the defendant. This inference is made all the more concrete by a portion of the unedited videotape, also not seen by the jury, in which the victim stated that she had been raped by the defendant in New Britain in the same manner as described in her written definition of rape. The jury, therefore, witnessed only the victim's general definition of "rape," even though the unedited videotape reveals

definition of rape to her allegations, the remaining portions of the redacted videotape showed the victim stating specifically that the defendant raped her in March or April of 1997, in New Britain.

At the conclusion of the trial, the court instructed the jury that certain things are not considered evidence for the jury's evaluation during deliberation. Elaborating on that instruction, the court further instructed the jury that the constancy of accusation evidence, specifically, the redacted videotape and the testimony of certain witnesses, was not admitted for the purpose of proving its truth and could not be used as substantive evidence to convict the defendant. Rather, the court instructed the jury that the only use for that evidence was to corroborate the in-court testimony of the victim.

The defendant must show, in challenging the evidentiary rulings of the court, that the court abused its discretion in a manner that resulted in substantial prejudice or injustice to him. See *State* v. *Orhan*, 52 Conn. App. 231, 237, 726 A.2d 629 (1999). Other than the victim's stricken answer regarding bleeding in New York, which the court timely instructed the jury to disregard, the defendant has not shown that evidence of criminal events taking place in New York entered substantively into the trial, and there is no indication that any such extrajurisdictional evidence influenced the jury's verdict. The jury was sufficiently instructed against any use of the extrajurisdictional testimony it heard and against the substantive use of the constancy of accusation evidence, and we presume, because nothing indicates otherwise, that the jury followed those instructions. See *State* v. *Reddick*, 224 Conn. 445, 454, 619 A.2d 453 (1993). In addition, the jury had sufficient evidence of illegal acts occurring in Connecticut on

that the victim applied the same definition to alleged New York events and Connecticut events.

which to arrive at its verdict. The defendant has failed to show that the introduction of any New York evidence caused substantial prejudice or injustice to him, and his alternative claim, therefore, is unavailing.

## II

The defendant next claims that the court improperly admitted as constancy of accusation evidence a redacted version of a videotaped police interview with the victim. In support of this contention, the defendant claims, per his objection at trial, that the redacted videotape exceeded the bounds of constancy of accusation evidence and prejudiced him by bolstering the victim's in-court testimony through its impermissible use as substantive evidence. Further, the defendant contends that the redacted videotape was more prejudicial than probative because it showed the demeanor and actions of the victim. The defendant also claims that the segments of the full interview viewed by the jury prejudiced his right to a fair trial because they described, without the jury's knowledge, sexual abuse that allegedly took place in New York.[7] We disagree with the defendant.

---

[7] The defendant concedes, however, that he did not raise this issue at trial in this context. Consequently, the defendant argues that plain error review is required because the redacted videotape presents unique circumstances in that it was "rigged through splicing" to include extrajurisdictional evidence for the purpose of bolstering the victim's credibility. Plain error review is "reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 239, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002). We are not persuaded that plain error review is warranted here. Furthermore, "[t]o permit a party to raise a different ground on appeal than was raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Romero*, 59 Conn. App. 469, 477, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). Moreover, although couching the claim in constitutional terms, the defendant makes no effort to analyze it under the *Golding* standard. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review under the abuse of discretion standard, therefore, only those of the defendant's claims regarding the videotape that were raised at trial.

"The constancy of accusation doctrine has its origins in common law. Since 1876, statements admitted under the constancy of accusation theory have been labeled by Connecticut courts as exceptions to the hearsay rule, and admitted only as corroborative evidence to strengthen the credit of the principal witness by showing constancy in her declarations." (Internal quotation marks omitted.) *State* v. *Bispham*, 48 Conn. App. 135, 145, 708 A.2d 604, cert. granted on other grounds, 244 Conn. 929, 711 A.2d 728 (1998), appeal dismissed, 249 Conn. 264, 731 A.2d 294 (1999). In *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), our Supreme Court concluded that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, *including, for example,* the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." (Emphasis added.) Id., 304. The court noted, however, that the articulated doctrine "does not affect those cases in which the details of a sexual assault complaint are otherwise admissible . . . ." Id., 304 n.19. The court also held that "the trial court must balance the probative value of the evidence against any prejudice to the defendant." Id., 305. Furthermore, our Supreme Court has recognized that a videotaped interview of a victim of a sexual assault, so long as it is not made for the purpose of preparing a victim for trial, is admissible at trial as constancy of accusation evidence. See *State* v. *Marshall*, 246 Conn. 799, 810–11, 717 A.2d 1224 (1998); *State* v. *DePastino*, 228 Conn. 552, 568–69, 638 A.2d 578 (1994).

The determination, therefore, of "[w]hether evidence is admissible under the constancy of accusation doc-

trine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Orhan*, supra, 52 Conn. App. 243. "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) Id., 237.

The defendant argues correctly that under *State* v. *Troupe*, supra, 237 Conn. 304, constancy of accusation evidence in a prosecution for sex related crimes is admissible solely to corroborate the victim's testimony and not as substantive proof of the charges against the defendant. Our review of the record and the redacted videotape in comparison with the full videotape indicates, however, that the defendant is incorrect in his proposition that the redacted videotape exceeded the bounds of the *Troupe* standard. Based on the facts concerning the videotape, as discussed in part I of this opinion, it is apparent that the redacted videotape introduced only those details necessary to demonstrate the fact, timing and place of the reported sexual crimes and the identity of the perpetrator. In addition, the court exercised its discretion reasonably in allowing the victim's definition of rape to be included on the redacted videotape, especially considering the age of the victim. The victim's original statement on the videotape that the defendant was sexually harassing her may have been unclear for the jury, and the definition not only better identified the alleged crimes, but also

cleared up any confusion as to what the victim was alleging.

For these reasons, the defendant also has failed to show that the videotape was used impermissibly as substantive evidence rather than simply to strengthen the credibility of the victim's in-court testimony by showing constancy in her accusations. Moreover, the defendant has failed to show that the introduction of the videotape caused him substantial prejudice. It is reasonable to presume that the court took into account the victim's demeanor and actions on the redacted videotape, and there is no indication that the court abused its discretion in admitting the videotape as constancy of accusation evidence under the circumstances here and the *Troupe* standard.

Furthermore, even if we were to conclude that the videotape or portions thereof were improperly admitted, we still could not conclude that the defendant has shown substantial prejudice or injustice. First, we presume, and there is no contrary indication, that the jury followed the court's instruction to use the videotape only as a means of corroborating the victim's in-court testimony. See *State* v. *Reddick*, supra, 224 Conn. 454. Second, it is well established that "if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." (Internal quotation marks omitted.) *State* v. *Bispham*, supra, 48 Conn. App. 146. Here, the videotaped constancy of accusation evidence was merely cumulative because it was repeated during the testimony of other witnesses.[8] Consequently, even if the admission of the videotape was improper, it does not follow that the admission was prejudicial or consti-

---

[8] The testimony of five witnesses offered similar accounts of the victim's reports of sexual abuse in New Britain. A sixth witness, the victim's younger sister, also offered testimony that the victim had reported to her the defendant's sexual abuse in New Britain.

tuted reversible error. We conclude, therefore, that the court properly admitted the videotape as constancy of accusation evidence and that the defendant's claim is without merit.

### III

The defendant next claims that the court abused its discretion by twice permitting on redirect examination of the victim testimony that went beyond the permissible scope of cross-examination. The defendant contends that the testimony allowed during the redirect examinations amounted to unfair surprise and prejudice against the defendant because the victim described unmentioned sexual acts perpetrated by the defendant and it allowed the state to represent its case to the jury two more times. Furthermore, the defendant emphasizes that, during a lunch break between the defendant's cross-examination and the state's redirect examinations, the prosecutor coached the victim to enter this new and prejudicial evidence into the trial.[9] The defendant claims that by allowing this evidence the court foreclosed any opportunity that the defendant had to challenge the victim's credibility and, thereby, any chance for his acquittal. We are not persuaded.

The following additional facts gleaned from the record are necessary for our resolution of this issue.[10] During the victim's direct testimony, she testified that the defendant sexually assaulted her multiple times "at

[9] The defendant maintains, however, that, in raising the "coaching incident," he is not raising a prosecutorial misconduct claim against the state. Rather, the defendant claims only that the incident exemplifies the inherent prejudice of allowing new evidence to surface during redirect examination.

[10] We note, at the outset, that the record reveals that the court was quite aware that certain evidence, if admitted, could potentially prejudice the trial and that it took pains to direct counsel for both sides away from introducing such evidence. The court's acknowledgment of the complexity of this case, however, did not prevent the court from allowing counsel wide latitude where it felt it was necessary to accomplish justice.

different houses in different rooms." On cross-examina-
tion, defense counsel implied that the victim had made
false accusations to the department because she was
angry with the defendant for disciplining her and she
knew that the department would react harshly to such
accusations. Defense counsel also attempted to show
that the victim asked fellow students at her school to
hurt her.[11] During the state's redirect examination, and
over the objections of defense counsel, the victim testi-
fied to an incident where the defendant had performed
cunnilingus on her during a move from her first resi-
dence to her second residence in New Britain. The
victim further testified that the defendant had vaginal
intercourse with her in a bathtub at the first residence
in New Britain when she was in third grade.

During its recross-examination, defense counsel
explored the veracity of the victim's earlier testimony,
to whom she had made her allegations and why, other
problems that she had at home and school, and the
relationships between herself, her mother and the
defendant. On re-redirect examination, over further
defense objections, the victim identified photographs
of her three New Britain residences, when she lived in
each and in which residence the defendant's various
sexual assaults occurred. Finally, in the last cross-exam-
ination and subsequent redirect examination of the vic-
tim, the victim testified further about the sexual assault
that occurred in the bathtub.

As with the defendant's other challenges to the
court's evidentiary rulings, we review this claim under
an abuse of discretion standard that requires a showing
by the defendant of substantial prejudice or injustice.
See *State* v. *Orhan*, supra, 52 Conn. App. 237. Our

---

[11] The defendant's reply brief also bears out that this attack on the victim's
credibility took place because defense counsel's cross-examination placed
the victim's credibility in "grave doubt."

Supreme Court "has made it clear that a witness is permitted on redirect examination to explain or clarify any relevant matters in his testimony which may have been weakened or obscured by his cross-examination. . . . The extent and scope of redirect examination, however, may be limited within the discretion of the trial judge." (Citation omitted.) *State* v. *Conrod*, 198 Conn. 592, 596, 504 A.2d 494 (1986). Moreover, "the court has discretion, even on redirect examination, to permit explanation or clarification of evidence given on the direct examination although not touched upon in the cross-examination." *Grievance Committee* v. *Dacey*, 154 Conn. 129, 152, 222 A.2d 339 (1966), appeal dismissed, 386 U.S. 683, 87 S. Ct. 1325, 18 L. Ed. 2d 404 (1967). It is fundamental as well "that when the credibility of a witness is attacked on cross-examination, the other party has a right to rehabilitate his witness during redirect examination. Under our adversary system of trials the opponent must be given an opportunity to meet this attack . . . by evidence sustaining or rehabilitating the witness." (Internal quotation marks omitted.) *State* v. *Daley*, 11 Conn. App. 185, 187, 526 A.2d 14 (1987). An examination of the record is necessary, therefore, to determine if the court exercised its discretion properly in this case. *State* v. *Conrod*, supra, 596. We also note that child witnesses are often granted special accommodations regarding their testimony due to their young age and inexperience with the courts. See, e.g., *State* v. *McPhee*, 58 Conn. App. 501, 507–508, 755 A.2d 893 (no abuse of discretion in allowing child witness to hold stuffed animal while testifying), cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000); *State* v. *Hydock*, 51 Conn. App. 753, 765, 725 A.2d 379 (no abuse of discretion in allowing state to ask child sexual assault victim leading questions), cert. denied, 248 Conn. 921, 733 A.2d 846 (1999).

Our examination of the record shows that defense counsel attacked the credibility of the victim on cross-

examination and that on redirect examination her testimony both responded to that attack and explained relevant matters brought out during direct examination. The evidence presented by the state through the victim's testimony during redirect examination rehabilitated the victim's credibility appropriately, and explained and clarified her less detailed direct testimony. As such, the victim's testimony neither went beyond the permissible scope of cross-examination, nor did it visit unfair surprise on the defendant, as it was the defendant who repeatedly attacked the credibility of the victim and opened the door to rehabilitation evidence. Likewise, the testimony did not afford the state impermissible opportunities to prove its case or deprive the defendant of opportunities to refute the credibility of the victim. The defendant, in fact, had three full opportunities to cross-examine the victim. Furthermore, considering that the victim was a child witness, it was not an abuse of the court's discretion to allow wide latitude during the entire course of her testimony. The defendant has failed to show substantial prejudice or injustice here, and we conclude, therefore, that the court acted well within its discretion in allowing the victim's testimony as it proceeded.

IV

In this final claim, the defendant urges us to hold that the court improperly failed to give a unanimity instruction to the jury with regard to the charges against him. The defendant concedes that the court instructed the jury with a general unanimity charge requiring a unanimous decision as to his guilt or innocence. Nevertheless, the defendant claims that the court violated his constitutional rights to a unanimous verdict and a fair trial when it instructed the jury to consider as to each count whether it believed that the victim's testimony, which related several separate acts of intercourse and inappropriate sexual touching by the defendant, sup-

ported a guilty verdict. The defendant argues that the court's instructions in this regard sanctioned a non-unanimous verdict on each count because the court did not expressly require unanimity from the jury as to which specific acts, if any, established the defendant's guilt under each count. As a result of this alleged failure "to promote a unanimous verdict," the defendant submits that the jury could have disagreed about which acts supported the verdict and still have convicted him improperly by agreeing in general that he was guilty of each count. Because nothing in the court's instructions to the jury sanctioned a nonunanimous verdict, we conclude that this claim is without merit.

The following additional facts are pertinent to the defendant's claim. At the inception of its instruction to the jury, the court announced that it might refer to certain evidence for illustration and clarification, but that the jury would not be limited to considering that evidence alone or to accepting the court's view of that evidence. The court then instructed the jury that the defendant "is presumed innocent unless, and until, he is proven guilty beyond a reasonable doubt." The court instructed the jurors specifically on their "duty to accept the law . . . [and] to determine the facts." The court also told them to "apply the law to those facts and render your verdict of guilty or not guilty." Furthermore, the court stated, "[I]f you find that the state has failed to prove, beyond a reasonable doubt, any one of the elements of a crime, you must then find the defendant not guilty of that crime." The court urged the jury to "[r]emember, there are three counts in this case. . . . You must consider each count separately and render a verdict of guilty or not guilty on that count, depending upon your findings concerning the elements of that count." Finally, the court stated to the jury that the verdict "has to be unanimous on each count." The defendant took exception to the court's instruction,

stating that the court should have instructed the jury to be "unanimous as to what act they're agreeing on for each count."[12]

A jury's verdict in a criminal matter "shall be unanimous and shall be announced by the jury in open court." Practice Book § 42-29. Regarding a court's instruction to a jury prior to its deliberations, "we have not required a specific unanimity charge to be given in every case . . . . We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991). This court is required to conclude, when reviewing a court's instruction to the jury, that "[t]he absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test." (Internal quotation marks omitted.) *State* v. *Cramer*, 57 Conn. App. 452, 461, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000).

The defendant cites the court's references to the victim's testimony as language in the court's instruction that sanctioned a nonunanimous verdict. We conclude that this language is inapposite and that there is a complete absence of language sanctioning a nonunanimous

---

[12] The defendant did not file a requested charge with the court before the court gave its instruction to the jury.

verdict. Indeed, after explaining the elements of each charge to the jury with reference to the victim's testimony, the court reminded the jury to consider each count separately, to make findings related to each element of each count and to act unanimously on each count. We note also that "[a] trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of [which] is to provide a fair summary of the evidence, and nothing more . . . ." (Internal quotation marks omitted.) *State* v. *Roman*, 67 Conn. App. 194, 204, 786 A.2d 1147 (2001). Given the court's admonitions concerning unanimity, "we must presume that the jury, in the absence of a fair indication to the contrary . . . followed the court's instruction as to the law." (Internal quotation marks omitted.) *State* v. *Reddick*, supra, 224 Conn. 454. We conclude, therefore, that the defendant's claim must fail because the court's instruction to the jury did not expressly sanction a nonunanimous verdict. Having so concluded, we need not address the defendant's arguments regarding the remainder of the *Famiglietti* test. See *State* v. *Famiglietti*, supra, 219 Conn. 619–20.

The judgment is affirmed.

In this opinion the other judges concurred.