******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* TERRENCE LAMONT
BOYD
(AC 38542)

Keller, Mullins and Norcott, Js.

*Syllabus*

Convicted of the crimes of disorderly conduct and interfering with an officer
arising out of an altercation outside a bar with a female patron, R, and
his subsequent arrest, the defendant appealed to this court. He claimed,
inter alia, that the evidence was insufficient to support his conviction
of disorderly conduct. Specifically, he claimed that his act of raising his
hand as R came toward him was insufficient to establish the intent
element of the crime of disorderly conduct. *Held*:

1. There was sufficient evidence presented at trial to support a finding that
the defendant engaged in violent, tumultuous or threatening behavior
to support his conviction of disorderly conduct: R testified that she
ducked because she believed that the defendant was going to hit her,
other witnesses testified that the defendant aggressively swung at the
back of R's head or shoved her, and the jury was free to credit that
testimony and to reject the defendant's self-serving testimony that he
raised his hand as R came toward him only to get her to back off;
moreover, the mens rea language in the disorderly conduct statute (§ 53a-
182) requires that a defendant's predominant intent must be to cause
what a reasonable person operating under contemporary community
standards would consider a feeling of anxiety prompted by threatened
danger or harm, and the state here presented sufficient evidence con-
cerning the circumstances leading up to the offensive conduct from
which the jury reasonably could have found that the defendant specifi-
cally intended to cause R inconvenience, annoyance, or alarm by either
swinging his fist at the back of her head or shoving her.

2. The defendant could not prevail on his claim that the trial court improperly
failed to instruct the jury concerning the definition of certain terms
when it set forth the elements of the charge of interfering with an officer;
the entirety of the defendant's claim was predicated on his mistaken
interpretation of the trial court's supplemental charge to the jury as its
principal charge, and the court, in its principal charge, instructed the
jury with the exact definitions that the defendant claimed on appeal
were omitted and in substantial conformance with his request to charge.

Argued May 22—officially released September 19, 2017

*Procedural History*

Substitute information charging the defendant with
two counts of the crime of threatening in the second
degree, and with the crimes of disorderly conduct and
interfering with an officer, brought to the Superior
Court in the judicial district of Stamford-Norwalk and
tried to the jury before *Holden, J.*; verdict and judgment
of guilty of disorderly conduct and interfering with an
officer, from which the defendant appealed to this
court. *Affirmed.*

*Richard H. Stannard III*, with whom, on the brief,
was *Justin R. Clark*, for the appellant (defendant).

*Linda Currie-Zeffiro*, assistant state's attorney, with
whom, on the brief, were *Richard J. Colangelo, Jr.*,
state's attorney, and *Katherine Donoghue*, deputy assis-
tant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Terrence Lamont Boyd, appeals from the judgment of conviction, rendered after a jury trial, of disorderly conduct in violation of General Statutes § 53a-182 (a) (1)[1] and interfering with an officer in violation of General Statutes § 53a-167a (a).[2] The jury found the defendant not guilty of two counts of threatening in the second degree, each in violation of General Statutes § 53a-62 (a) (2). On appeal, the defendant claims that (1) there was insufficient evidence presented at trial to convict him of disorderly conduct and (2) the trial court erred when it provided incomplete or incorrect jury instructions. We disagree and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. At approximately 11 p.m. on June 27, 2014, Bridgette Powell arrived with Alisabeth Rojas at the Moose Lodge (bar) in South Norwalk. The defendant arrived at the bar separately. Rojas, an employee of the bar, was attending as a patron that night. Although Rojas did not previously know the defendant, Powell had known him for a long time. While at the bar, Powell and Rojas consumed alcoholic drinks.

At approximately 2 a.m. on June 28, 2014, when the patrons were leaving the bar, Melvyn Mayberry, a bouncer working that night, saw Rojas tell the defendant that it was time to leave the bar. The defendant responded that he was not going to leave. After Mayberry informed the defendant that he needed to leave, he agreed and, escorted by Mayberry, began to exit the bar. Mayberry saw the defendant and Rojas begin to argue immediately outside the bar, and inserted himself between the two. He heard the defendant say "the bitch ain't gonna cut me." At that point, all of the parties were at the top of the stairs on the landing outside the bar. Mayberry escorted Powell, Rojas, and the defendant down the stairs and into the alley, toward their respective cars, while still maintaining a physical barrier between the defendant and Rojas, with Rojas walking slightly ahead.

Meanwhile, Garrett Kruger, a uniformed Norwalk police officer, was in his patrol cruiser across the street when he saw Powell, Rojas, and the defendant exiting the bar and "screaming and yelling at each other." Based on his observations, the defendant "appeared to be the aggressor." Kruger drove his cruiser into the alley where Powell, Rojas, and the defendant were fighting and radioed for backup. He then exited his cruiser and loudly told Powell, Rojas, and the defendant to "leave the area and disperse" and to "stop yelling at each other." They followed Kruger's command to disperse and began to walk further down the alley toward their cars, but they did not cease yelling at one another. As a

result, Kruger followed them on foot down the alleyway from a distance of approximately fifteen feet. Kruger saw the defendant "screaming at the two females," accompanied by aggressive arm movements, "as if he was almost talking with his hands in an angry tone of voice."

After Kruger, Mayberry, Powell, Rojas, and the defendant exited the alley into the small parking lot where the patrons' cars were located, the defendant came within three feet of Rojas as she turned her back to open the passenger side door of Powell's car. Kruger and Mayberry saw the defendant swing his fist at Rojas' head while her back was to him and as she was bending down to open the car door. Kruger was within four feet of the defendant and Rojas when he saw the "defendant [take] an aggressive stance toward [Rojas] and [ball] up his fists, [come] all the way back and [begin] to throw a punch." Rojas ducked when she peripherally saw the movement and felt "threatened." As a result, Rojas lost her balance, stumbled, and fell to one knee.[3]

Immediately after Rojas fell, Mayberry grabbed the defendant in a "bear hug," and Kruger simultaneously grabbed the defendant, using "[m]ild physical force" to place the defendant's forearms and hands against the alley wall. During this struggle, Kruger identified himself as a police officer and told the defendant multiple times to "calm down" and to "relax," but the defendant kept screaming at Kruger to "go fuck [himself]" and "what the fuck are you arresting me for?" Instead of complying with Kruger's commands, the defendant balled his fists and tensed up his back before attempting to spin to face Kruger. Kruger then used the defendant's body momentum to take him to the ground.

Ramon Tejada, another uniformed Norwalk police officer, ran down the alley to assist at this moment. While the defendant was on the ground, he was actively resisting arrest by refusing the officers' requests to give them both of his hands, which were then underneath his body. Kruger, who was on the defendant's left side, managed to pull out the defendant's left arm and to place a handcuff on his left wrist. Kruger and Tejada, who was on the defendant's right side, repeatedly commanded the defendant to pull out his right arm so that they could secure the other handcuff, but the defendant failed to comply with those commands and, at one point, said that "he was not going to let go." Together, Tejada and Kruger eventually were able to secure the defendant with handcuffs. While they were walking with the defendant toward the front of the alley to the cruisers, the defendant stated: "Why am I getting arrested? I didn't fucking do shit. She stabbed me. Why am I the one getting arrested?" The defendant refused to allow the officers to check for injury, but Kruger shone a flashlight along the defendant's body to check for any tears or rips to his clothing and for any stab wounds.

Neither officer saw any indication of a wound on the defendant's body. The defendant did not have blood on him, was not limping, and did not complain of being in pain at any point. Because the officers did not see any indication of a stab wound, they placed him in the back of Tejada's cruiser instead of calling the Norwalk paramedic team.

After securing the defendant in Tejada's cruiser, both officers walked back to Rojas and searched her person and purse for any sharp object that may have been used to stab the defendant. Nothing was located, and there was no indication of blood on her person or belongings.

On July 7, 2015, the defendant was charged in the operative information with disorderly conduct, interfering with an officer, and two counts of threatening in the second degree. After a jury trial, the defendant was found guilty of disorderly conduct and interfering with an officer, and not guilty of the two counts of threatening in the second degree. On August 27, 2015, the court sentenced the defendant to a total effective sentence of fifteen months imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence presented at trial to convict him of disorderly conduct. He specifically contends that his testimony at trial established that his actions on the day of the incident did not meet the elements of the court's instruction to the jury on disorderly conduct because he "merely rais[ed] his hand up or [put] it out as [Rojas] came [toward] him and . . . she ran into it and fell as a result of the push." The state responds that it presented ample evidence from which the jury could have found, beyond a reasonable doubt, that the defendant's actions satisfied the elements of disorderly conduct. We agree with the state.

The following additional facts are relevant to this claim. Contrary to the testimony of the other witnesses, who observed the defendant aggressively swing at the back of Rojas' head, the defendant testified that he, in an effort to "protect" himself, "pushed her" away from him.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defend-

ant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015).

The court's instructions adopted, nearly verbatim, our articulation of the elements of disorderly conduct: "We have explained that the crime of disorderly conduct consists of two elements: (1) that the defendant intended to cause, or recklessly created a risk of causing, inconvenience, annoyance or alarm and (2) that he did so by engaging in fighting or in violent, tumultuous or threatening behavior . . . ." (Internal quotation marks omitted.) *State* v. *Briggs*, 94 Conn. App. 722, 726–27, 894 A.2d 1008, cert. denied, 278 Conn. 912, 899 A.2d 39 (2006).

We conclude that there was sufficient evidence presented at trial to support the defendant's conviction of disorderly conduct. Both Mayberry and Kruger testified that the defendant aggressively swung at the back of Rojas' head when she was trying to enter Powell's car. Although Powell testified that the defendant neither swung at nor punched Rojas, and that Rojas fell because of a combination of her intoxicated state and her high heels, she also testified that the defendant shoved Rojas.

Rojas testified that, when she saw the defendant in her peripheral vision, she ducked because she believed that he was going to hit her. She further testified that she fell to one knee as a result of her movement to avoid the defendant hitting her.

The defendant concedes that "[i]f the state's version of the facts is to be believed, then [he] would certainly have engaged in 'fighting or in violent, tumultuous or threatening behavior.' " He insists, however, that the evidence, namely, his own testimony,[4] supported that he "merely rais[ed] his hand up or [put] it out as [Rojas] came [toward] him and that she ran into it and fell as a result of the push." He further argues that this self-serving testimony supported his argument that his "conscious objective in raising his hand was not necessarily to cause inconvenience, annoyance or alarm." He also argues, without citing to any legal authority, that "the mere act of raising one's hand—either in defense or offense—does not necessarily satisfy the intent element of the crime of disorderly conduct." We are not persuaded.

First, this argument ignores our standard of review, which requires us to construe the evidence in the light most favorable to sustaining the verdict and to defer to the jury's credibility assessments. See *State* v. *Crespo*, supra, 317 Conn. 16–17; *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009). "[The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 576, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

The defendant's argument also fails to account for well-established law that interprets the mens rea language of § 53a-182 (a)—"with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof"— to "mean that the defendant's predominant intent [must be] to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Andriulaitis*, 169 Conn. App. 286, 293, 150 A.3d 720 (2016), citing *State* v. *Indrisano*, 228 Conn. 795, 810, 640 A.2d 986 (1994).

The state presented sufficient evidence from which the jury reasonably could have found that the defendant specifically intended to cause Rojas inconvenience, annoyance, or alarm by either swinging his fist at the

back of her head, or shoving her. The jury was free to credit the testimony of Mayberry, Kruger, Powell, and Rojas that the defendant either swung his fist at the back of Rojas' head, or shoved her, and was also free to reject the defendant's self-serving testimony that he merely pushed her shoulder or raised his hand to get her to "back off." See *State* v. *Senquiz*, supra, 68 Conn. App. 576. The jury also was free to credit the circumstances leading up to the offensive conduct, including the undisputed argument between Rojas and the defendant that continued from the front of the bar, down the alley, and to Powell's car, to draw the inference that the defendant, whom Kruger described as the aggressor, intended to cause Rojas inconvenience, annoyance, or alarm.

We conclude that the evidence presented at trial was sufficient for a reasonable fact finder to conclude that the state proved beyond a reasonable doubt all of the necessary elements required to support a conviction for disorderly conduct under § 53a-182 (a) (1).

## II

The defendant next claims that the court improperly failed to charge the jury, pursuant to his request to charge, on all of the elements of interfering with an officer. Specifically, he argues that the court erred when it failed to instruct the jury on the definitions of the elements of interference and the element of intent. The entirety of the defendant's claim is predicated on his mistaken interpretation of the court's supplemental jury charge as its principal jury charge. As a result, the defendant fails to recognize that the court, in its principal charge, charged the jury with the exact instructions he now claims, on appeal, were missing. Accordingly, we reject the defendant's claim of instructional error.

The following procedural history is relevant to our disposition of the defendant's claim. On the first day of trial, both the defendant and the state submitted to the court very similar requests to charge. After the parties rested, the court held an on-the-record charging conference. After confirming that defense counsel had seen the state's proposed request to charge, the court stated that it would charge the jury in accordance with the state's proposed charge, with the exception that it might give one instruction in regard to the element of intent, instead of repeating the same for each charge. The court outlined its proposed instructions as to the charge of interfering with an officer, which included the exact same language on intent that the court gave the next day in its actual charge. After consulting with both parties, the court advised that it would hear any objections to the proposed charge the following morning.

The following day, the defendant objected only to the court's proposed instruction regarding conscious-

ness of guilt evidence, and the court subsequently omitted it. After the closing arguments, the court instructed the jury (principal charge). After the court instructed the jury and the jurors exited the courtroom, it provided the parties with a final opportunity to comment on the principal charge. The state had three objections to the court's principal charge, two relating to the court's instructions on interfering with an officer. In relevant part, the state argued first that the court incorrectly had included the word "not" in its instruction to the jury on how broadly it was to construe the words "hinders," "endangers," or "interferes." Second, the state argued that the court failed to name Tejada in addition to Kruger in its summary of the charge on interfering with an officer. Defense counsel had one objection to the court's charge, but it did not relate to the court's charge on interfering with an officer. When the court asked the parties if there was "[a]nything else," counsel answered, "[t]hat's it."

In response to the parties' objections or their perceived deficiencies in the court's principal charge, the court provided the following supplemental charge, which the defendant now argues constituted the court's entire instruction as to the elements of interfering with a police officer: "Interfering with a police officer; that applies to either [Tejada] or [Kruger]. Further, the words in the first element are obstructed, resisted, hindered or endangered a [police] officer. That's interfered with an officer. And the words, hinders, endangers or interferes, are to be broadly construed to prohibit any act that would amount to meddling in or hampering the activities of the police in the performance of their duties. And again, you'll have the elements with you for your review." The court subsequently gave the jurors a written copy of its principal charge for use in their deliberations.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454–55, 10 A.3d 942 (2011).

"A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. [See Practice Book §§ 16-20 and 42-16]." *State* v. *Terwilliger*, 294 Conn. 399, 406, 984 A.2d 721 (2009). "Thus, a party may preserve for appeal a claim that an instruction, which was proper to give, was nonetheless defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Moreover, the submission of a request to charge covering the matter at issue preserves a claim that the trial court improperly failed to give an instruction on that matter. . . .

"Under either method, some degree of specificity is required, as a general request to charge or exception will not preserve specific claims. . . . Thus, a claim concerning an improperly delivered jury instruction will not be preserved for appellate review by a request to charge that does not address the specific component at issue . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, 165 Conn. App. 255, 284–85, 138 A.3d 1108, cert. denied, 322 Conn. 904, 138 A.3d 933 (2016).

We conclude that the defendant preserved his claim of instructional error by filing a request to charge. The defendant's claim ultimately fails, however, because he has misconstrued the court's *supplemental charge* as its complete charge. In particular, the defendant argues that the court improperly omitted in its supplemental instruction language that both his and the state's requests to charge included, to wit: the definitions of "obstructs," "resists," "hinders," and "endangers," and that each are to be "broadly construed to prohibit any act that would amount to meddling in or hampering the activities of police in the performance of their duties." He additionally argues that the court improperly omitted both parties' request to charge on the intent element of interfering with an officer, which included language that "[a] person acts intentionally with respect to a result when his conscious objective is to cause such [a] result." We conclude, however, that after completing a careful review of the record, it is clear that in its principal charge, the court instructed the jury in substantial conformance with the defendant's request to charge. Indeed, the court instructed the jury exactly as the defendant now argues the court should have instructed the jury concerning the elements of interfering with an officer.[5] Accordingly, we reject the defendant's claims of error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm . . . such person: (1) Engages in fighting or in violent,

tumultuous or threatening behavior . . . .”

[2] General Statutes § 53a-167a (a) provides in relevant part: “A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer’s . . . duties.”

[3] Powell testified at trial that she saw the defendant “shove” Rojas and that Rojas fell because “she lost her balance” and “because she had some heels on.”

[4] The defendant testified that he pushed Rojas away from him, and that he touched her shoulder as she came towards him in an effort to get her to “back up.” He also testified that he was simply trying to protect himself.

[5] The only meaningful difference between the defendant’s request and the charge given is that the defendant requested more elaboration of the second element of interference with an officer, which addresses the jury’s consideration of whether the officers’ use of force was justified. The defendant’s appellate claim, however, does not challenge the court’s instruction as to the use of force. Instead, he challenges only the court’s purported failure to instruct the jury on the definitions of the elements of interference and the element of intent.

———————————————————