******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANGEL ARES
(SC 20367)

McDonald, D'Auria, Mullins, Kahn and Ecker, Js.*

*Syllabus*

Convicted, after a bench trial, of the crimes of first degree arson, first degree reckless endangerment, and risk of injury to a child in connection with a fire at a multifamily residence where the defendant lived, the defendant appealed to this court. After getting into an argument with his stepfather on the first floor of the residence, the defendant was forced out of the building by one of his stepbrothers, shortly after which the defendant set fire to a mattress on the front porch. The fire engulfed the building, but all of the occupants of the residence were evacuated, including four children who were inside a second floor apartment. The state subsequently charged the defendant with four counts of risk of injury to a child under the act prong of the risk of injury statute (§ 53-21 (a) (1)), alleging, in each count, that the defendant "did an act likely to impair the health [or] morals of a child." In finding the defendant guilty on each of those four counts, the trial court concluded that he had "placed each child in a situation . . . likely to injure the child's physical health" by intentionally setting the fire. On the defendant's appeal from the judgment of conviction, *held*:

1. The defendant could not prevail on his claims that there was insufficient evidence to support his conviction of risk of injury to a child under the act prong of § 53-21 (a) (1) and that the act prong was unconstitutionally vague as applied to him, which were based on his assertion that the state had failed to adduce proof that he had perpetrated an act directly on the children in the second floor apartment:

a. The evidence presented at trial was sufficient to support a conviction of risk of injury to a child under the act prong of § 53-21 (a) (1), as that evidence, and the reasonable inferences drawn therefrom, demonstrated that the defendant's decision to set fire to the mattress on the front porch resulted in a risk of direct, physical harm to the four children in the second floor apartment:

It was of no consequence that the defendant's actions were motivated by the argument with the first floor occupants, rather than being specifically directed at the children on the second floor, or that the children escaped from the building unharmed, as neither specific intent nor proof of actual injury is required to prove a violation of § 53-21 (a) (1).

The evidence supported a reasonable inference that the defendant knew the children were present in the residence at the time of the incident, as the defendant's stepbrother, whom the trial court found to be credible, testified that he had told the defendant to leave the residence because he was doing "crazy things around the kids," and a reasonable finder of fact could have concluded, on the basis of the totality of the circumstances, that the defendant's conduct was sufficiently egregious to rise to the level of blatant abuse, especially in light of evidence presented about the speed of the blaze and the intensity of the heat and smoke that it produced.

b. The act prong of § 53-21 (a) (1) was not unconstitutionally vague as applied to the defendant:

A person of ordinary intelligence would understand that the defendant's alleged conduct constituted an act likely to impair the health of a child, as proscribed by the act prong of § 53-21 (a) (1).

Because it was reasonable to infer that the defendant knew that the children were inside of the residence when he set fire to the mattress, and because § 53-21 (a) (1) requires neither specific intent nor proof of actual injury, this court perceived no plausible reason to believe that the defendant was operating under a mistaken belief that his conduct with regard to the children was lawful.

2. The trial court improperly found the defendant guilty of risk of injury under the situation prong of § 53-21 (a) (1), in violation of the defendant's constitutional right to notice of the charges against him, insofar as the state's information alleged only that the defendant violated the act prong of that subdivision, and, accordingly, this court reversed the trial court's judgment with respect to the four counts of risk of injury to a child and remanded the case for a new trial as to those counts:

The trial court's finding regarding the risk of injury counts, namely, that the defendant had "unlawfully placed each child in a situation . . . likely to injure the child's physical health," tracked the elements and the language of the situation prong of § 53-21 (a) (1), and the trial court's use of that language persuaded this court that the defendant improperly had been convicted under the situation prong of § 53-21 (a) (1) and not under the act prong of that subdivision, the latter of which the defendant specifically was charged with violating in the operative information.

Argued March 29—officially released November 22, 2022

*Procedural History*

Substitute information charging the defendant with eight counts of the crime of reckless endangerment in the first degree, four counts of the crime of risk of injury to a child, two counts of the crime of arson in the first degree, and one count of the crime of criminal mischief in the first degree, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Graham, J.*; judgment of guilty of eight counts of reckless endangerment in the first degree, four counts of risk of injury to a child, and one count of arson in the first degree, from which the defendant appealed to this court. *Reversed in part*; *new trial.*

*John R. Weikart*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Linda F. Rubertone*, senior assistant state's attorney, with whom, on the brief, was *Sharmese L. Walcott*, state's attorney, for the appellee (state).

*Opinion*

KAHN, J. After a bench trial, the defendant, Angel Ares, was convicted of one count of arson in the first degree in violation of General Statutes § 53a-111, eight counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63, and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). In the present appeal, the defendant challenges only his convictions of risk of injury to a child by raising the following three claims of error: (1) there was insufficient evidence to support a conviction under the act prong of § 53-21 (a) (1) because the state had failed to adduce any proof that he had "perpetrated an act directly on the person of a minor" as required by the judicial gloss first imposed by this court in *State v. Schriver*, 207 Conn. 456, 542 A.2d 686 (1988); (2) the act prong of § 53-21 (a) (1) is unconstitutionally vague as applied to him because the conduct proven by the state falls outside of that very same gloss; and (3) the trial court improperly convicted him under the situation prong of § 53-21 (a) (1) when the state's allegations against him were limited to only the act prong of that statute.[1] Although our reading of *Schriver* and its progeny leads us to reject the defendant's first two claims on this record, we agree with the defendant that the trial court committed reversible error by applying the incorrect elements and convicting the defendant under the situation prong, a provision he was not formally charged with violating. Accordingly, we reverse the trial court's judgment of conviction with respect to the counts of risk of injury to a child and remand the case for a new trial only as to those four counts.

The following undisputed facts are relevant to our consideration of the claims presented. At the time of the incident in question, the defendant lived on the first floor of a three-family residence located on Brook Street in the city of Hartford. The defendant was looking for money in order to purchase drugs and got into an argument inside of that residence with his stepfather, Maximino Rosa, on a Saturday afternoon. The argument escalated, and the defendant was eventually forced out of the building's front door by one of his stepbrothers, Wilfredo Rosa. Evidence adduced at trial demonstrated that, moments after being ejected from the building, the defendant, using a book of matches, set fire to a mattress on the front porch and fled the scene.[2]

The resulting conflagration was, as the trial court aptly described, "inten[se], fast moving, and dangerous to anyone in proximity to it." The police officer who first arrived at the scene, Brian Herrmann, testified that all three stories of the building were already engulfed in flames by the time he arrived.[3] Ceilings collapsed, floors began to give way, and interior walls were either charred or covered in soot. Electrical wires detached from the outside of the building, dropped onto a nearby

vehicle, and started sparking in the street. The vinyl siding on the building melted and began falling around the structure's exterior. Captain Brian Kennedy of the Hartford Fire Department testified that the fire caused overwhelming heat and smoke—even in the rear portion of the building—and that the conditions inside were "almost not survivable if you're not on some kind of self-contained breathing apparatus."

All twelve occupants who were at the scene at the time of the incident were evacuated from the building that day with only minor injuries reported. The defendant's mother, who was on the first floor when the fire started, was taken to a hospital and treated for smoke inhalation. A firefighter who responded to the scene sustained a laceration to his forehead from falling debris while inside of the building. A couple living in the third floor apartment escaped unharmed but lost two family pets. Most relevant to the claims raised in the present appeal, however, were the four minor children who were inside of the building's second floor apartment. Wilfredo's brother, Danny Rosa, was with those children that day and got all of them out of the building without injury.[4]

The state subsequently charged the defendant with several crimes, including two counts of arson in the first degree in violation of § 53a-111, eight counts of reckless endangerment in the first degree in violation of § 53a-63, four counts of risk of injury to a child in violation of § 53-21 (a) (1), and one count of criminal mischief in the first degree in violation of General Statutes § 53a-115. The defendant entered a plea of not guilty to those charges and waived his right to a jury trial. During the two day bench trial that followed, the state presented testimony from various occupants of the building, police officers, and firefighters. The defendant pursued a theory that the fire had been caused unintentionally by some other person's discarded cigarette.

The trial court rejected that defense and found the defendant guilty on all counts except for the count alleging criminal mischief in the first degree.[5] In its oral decision, the trial court made the following finding of fact: "[O]n February 24, 2018, in the midafternoon in the vicinity of 14-16 Brook Street in Hartford . . . the defendant, with the intent to at least damage that building, started a fire, which destroyed major portions of that three-family residence." The trial court also found that, "at the time he set the fire, the defendant knew the building was occupied . . . ." This specific factual finding is reasonably supported by evidence in the record. Danny Rosa testified at trial that family members moved freely throughout the house and that, in fact, the defendant himself had been on the second floor shortly before the fire. Wilfredo Rosa likewise testified that, at some point during the argument that

followed in the first floor apartment, the defendant was specifically told to leave because he shouldn't be "doing crazy things around the kids . . . ."

The trial court sentenced the defendant to eighteen years of incarceration on one of the two counts of arson in the first degree, ten years of incarceration on each of the four counts of risk of injury to a child, and one year of incarceration on each of the eight counts of reckless endangerment in the first degree.[6] The trial court specified that each of these sentences were to run concurrently, resulting in a total effective sentence of eighteen years of incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The defendant raises three claims of error relating to his conviction on the counts alleging risk of injury to a child. First, the defendant claims that the evidence adduced by the state at trial was insufficient to support a conviction under the act prong of § 53-21 (a) (1) because the state had failed to adduce any proof that he had "perpetrated an act directly on the person of a minor." The defendant next claims that this same lack of proof renders that section of the statute unconstitutionally vague as applied to him. Finally, the defendant claims that the trial court violated his constitutional right to notice of the accusations against him by improperly applying the elements under the situation prong of our risk of injury statute when the state's information formally alleged only a violation of that statute's act prong. We address the defendant's first two claims, both of which turn on an examination of the judicial gloss imposed by *Schriver* and its progeny, in part I of this opinion. We then consider the defendant's constitutional notice claim in part II of this opinion.

I

Although evidentiary insufficiency and constitutional void for vagueness claims are often analytically distinct from one another, in this case, they are entwined because both are based on the defendant's assertion that the record lacks evidence of an act directly perpetrated on the children. See, e.g., *State* v. *Schriver*, supra, 207 Conn. 458 n.3 (noting that claim of "evidentiary [sufficiency was the] flip side of the [defendant's] void for vagueness challenge"). We address these two claims first because the defendant, if successful on either, would be entitled to relief in the form of a directed judgment of acquittal. See *State* v. *Padua*, 273 Conn. 138, 178–79, 869 A.2d 192 (2005).

In order to put the defendant's first two claims into context, we must begin with a brief review of the act prong of the risk of injury statute and the judicial gloss imposed on it by case law. This court first described the conduct proscribed under the second part of § 53-21 (a) (1) as "acts directly perpetrated on the person

of the minor and injurious to his moral or physical [well-being]" in *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). That description was subsequently elaborated on, and elevated to constitutional significance, by this court's decision in *State* v. *Schriver*, supra, 207 Conn. 456. The defendant in that case had grabbed the waist of a fully clothed child while uttering sexually suggestive remarks and was subsequently charged with violating § 53-21 by committing " 'an act likely to impair the health or morals of the victim.' " Id., 457–58.

In addressing an as applied vagueness claim in *Schriver*, we separated our analysis of acts likely to impair the "morals" of children on the one hand and acts likely to impair the "health" of children on the other. (Internal quotation marks omitted.) Id., 461. Looking to our decision in *State* v. *Pickering*, 180 Conn. 54, 64, 428 A.2d 322 (1980), we held that the "core" of the prohibition on acts likely to impair the *morals* of children was properly reduced to "deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Schriver*, supra, 207 Conn. 463. Because the defendant in *Schriver* had not been accused of such conduct, we concluded that he "had no reasonable opportunity to know that his conduct was prohibited by the impairment of morals clause of § 53-21." Id., 466.

Turning to acts likely to impair the health of children, we concluded that our precedent "provide[d] an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse." [7] Id.; see, e.g., *State* v. *McClary*, 207 Conn. 233, 234–39, 541 A.2d 96 (1988) (child suffered brain injury from violent shaking); *State* v. *Eason*, 192 Conn. 37, 38, 470 A.2d 688 (1984) (child beaten severely with belt), overruled in part on other grounds by *Paulsen* v. *Manson*, 203 Conn. 484, 525 A.2d 1315 (1987); *State* v. *Martin*, 189 Conn. 1, 6, 454 A.2d 256 (child pushed into wall and then to floor), cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Palozie*, 165 Conn. 288, 290–92, 334 A.2d 468 (1973) (child thrown against chair and head hit against floor). Applying that standard to the conduct alleged in *Schriver*, we held that grabbing the waist of a fully clothed child while uttering sexually suggestive remarks fell outside of the confines of that provision. Id., 466. Because the conduct alleged by the state in *Schriver* did not fall within the act prong's protections to either the morals or the health of the child, we agreed with the defendant's vagueness claim.[8] Id., 468.

Over the decades following *Schriver*, two particularly relevant legal principles have embedded themselves in our state's risk of injury jurisprudence. The first is that the state need not prove specific intent in order to establish a violation under either the situation or act

prong. See, e.g., *State* v. *Maurice M.*, 303 Conn. 18, 28, 31 A.3d 1063 (2011) (specific intent is not required to establish violation of situation prong); *State* v. *March*, 39 Conn. App. 267, 274–75, 664 A.2d 1157 (specific intent is not required to establish violation of act prong), cert. denied, 235 Conn. 930, 667 A.2d 801 (1995). Evidence sufficient to support a finding of general intent will suffice. See, e.g., *State* v. *McClary*, supra, 207 Conn. 240; *State* v. *Euclides L.*, 189 Conn. App. 151, 161–62, 207 A.3d 93 (2019).

The second well established legal principle is that the state need not prove actual injury in order to secure a conviction under either the situation prong or the act prong of § 53-21 (a) (1). See, e.g., *State* v. *Burton*, 258 Conn. 153, 161, 778 A.2d 955 (2001) ("[Section] 53-21 does not require a finding that the victim's [health or] morals were actually impaired. On the contrary, § 53-21 provides [in relevant part] that anyone 'who . . . wilfully or unlawfully . . . does any act *likely to impair* the health or morals of any such child' may be found guilty." (Emphasis added.)); see also *State* v. *Gewily*, 280 Conn. 660, 669, 911 A.2d 293 (2006); *State* v. *Padua*, supra, 273 Conn. 148; *State* v. *Samms*, 139 Conn. App. 553, 559, 56 A.3d 755 (2012), cert. denied, 308 Conn. 902, 60 A.3d 287 (2013). Although *Schriver* requires that the defendant commit an act of "deliberate, blatant abuse"; *State* v. *Schriver*, supra, 207 Conn. 466; it does not require that the defendant cause an actual injury. It remains possible for a defendant's conduct to be sufficiently egregious in nature that it rises to the level of deliberate, blatant abuse, even in the absence of a defendant's direct physical contact with a child. See, e.g., *State* v. *Owens*, 100 Conn. App. 619, 622–23, 638, 918 A.2d 1041 (concluding that "the mere fact that the defendant did not physically touch [the child] while pursuing her should not relieve him of criminal liability under the act prong" when defendant chased child with knife after stabbing child's mother), cert. denied, 282 Conn. 927, 926 A.2d 668 (2007). Although proof of physical contact has been required to sustain a conviction under the act prong of § 53-21 in certain other contexts; see *State* v. *Pickering*, supra, 180 Conn. 64 (statutory proscription of acts likely to impair *morals* of children required "deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner"); neither the statute's plain text nor the case law applying it requires proof of such contact in all cases.

A

With this background in mind, we turn to the claim of evidentiary sufficiency raised by the defendant in the present appeal. Specifically, the defendant asserts that, in order "[t]o prove a violation of the act prong . . . the state must demonstrate that the defendant perpetrated an act directly on the person of a minor." The

defendant argues that, because the evidence introduced at trial demonstrated only that he lit fire to a mattress on the building's front porch, the state cannot establish that he ever took any act directly on the person of a minor. The state contends, in response, that the evidence presented at trial was sufficient to show that the defendant had committed an act likely to be injurious to the physical health of the four children inside of the home at the time of the fire and that, as a result, the defendant's claim of evidentiary sufficiency lacks merit. For the reasons that follow, we agree with the state.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Taupier*, 330 Conn. 149, 186–87, 193 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019).[9]

Defense counsel candidly conceded at oral argument before this court that the evidence would have been sufficient to sustain the defendant's conviction had the children been on the mattress when he started the fire. He did not—and clearly could not—contend that such conduct would fall outside of the ambit of the act prong. See, e.g., *State* v. *Michael T.*, 194 Conn. App. 598, 601–605, 222 A.3d 105 (2019), cert. denied, 335 Conn. 982, 242 A.3d 104 (2020). The record now before us, however, differs only in degree from that hypothetical. The fact that the defendant's actions were motivated by his fight with the occupants on the first floor, rather than being specifically directed at the four children themselves, is not categorically dispositive; as previously stated in this opinion, specific intent is not required to prove a violation of § 53-21 (a) (1). See, e.g., *State* v. *McClary*, supra, 207 Conn. 240. The fact that the children escaped from the building without being harmed by the resulting flames or smoke is, likewise, not dispositive; to repeat, proof of actual injury is not required. See, e.g., *State* v. *Gewily*, supra, 280 Conn. 669; see also *State* v. *Owens*, supra, 100 Conn. App. 638.

In order to secure a conviction under the act prong in the present case, the state was required to prove that the defendant had engaged in an act of "deliberate, blatant abuse" that was likely to "[endanger a] child's physical well-being." *State* v. *Schriver*, supra, 207 Conn. 466–67. We believe that the evidence presented at trial, and the reasonable inferences that the trier of fact could have drawn from that evidence, was sufficient to show that the defendant's deliberate choice to set fire to a

mattress on the apartment building's front porch risked direct, physical harm to the four children that it is reasonable to infer the defendant knew to be inside of the building at that time. As to the defendant's knowledge of the children's presence, the trial court specifically found "each of the state's witnesses to generally be credible," and there was testimony from one of the state's witnesses, Wilfredo Rosa, that, on the day of the incident, he told the defendant to leave the house because he was "doing crazy things *around the kids* . . . ." (Emphasis added.) Viewing the evidence in a light most favorable to sustaining the verdict, we conclude that there was evidence to support a reasonable and logical inference that the defendant knew the children were present in the home at the time of the incident. See, e.g., *State* v. *Roy D. L.*, 339 Conn. 820, 853, 262 A.3d 712 (2021) (concluding that evidence supported "reasonable and logical inference" that defendant's touching of victim was undertaken for purpose of humiliating her (internal quotation marks omitted)). A reasonable finder of fact could have concluded, on the basis of the totality of the circumstances present in this particular record, that such conduct was sufficiently egregious to rise to the level of blatant abuse. Although the initial distance between the four children and the fire's origin, together with their eventual escape from the structure, may well have been relevant to the question of whether such physical injuries were sufficiently probable to warrant conviction, ample evidence about the speed of the blaze—together with the intensity of both the heat and smoke it produced—undisputedly supports the trial court's factual finding in that regard. As a result, the defendant's claim of evidentiary insufficiency must fail.

B

The defendant's second claim is that the act prong of our risk of injury statute is unconstitutionally vague as applied to him under the facts of this case. Specifically, the defendant argues that his conduct did not constitute an act perpetrated on the children and, as such, fell so far outside of the judicial gloss imposed by *Schriver* and its progeny that he lacked adequate notice that his conduct constituted a violation of the act prong. For the reasons that follow, we disagree.

"A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defen-

dant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . . Thus, even [a] facially vague law may . . . comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. (Citation omitted; internal quotation marks omitted.) *State* v. *Fields*, 302 Conn. 236, 260–61, 24 A.3d 1243 (2011).

We have no difficulty in concluding that a person of ordinary intelligence would understand that the conduct alleged in the present case constitutes an "act likely to impair the health . . . of [a] child" proscribed by the act prong of § 53-21 (a) (1). As previously discussed, judicial decisions interpreting our *risk* of injury statute firmly establish that it is a general intent crime and that the presence of actual physical injury is not required. Indeed, because it is reasonable for the trier of fact to have inferred that the defendant knew four children were inside of the home when he set fire to the mattress, we can perceive of no plausible reason to believe that the defendant would have been operating under the mistaken belief that his conduct with regard to those children was lawful. See, e.g., *State* v. *Winot*, 294 Conn. 753, 770, 988 A.2d 188 (2010) ("the fundamental purpose of the void for vagueness doctrine is to ensure fair warning in order to avoid traps for the innocent" (emphasis omitted; internal quotation marks omitted)). As a result, the defendant's as applied vagueness claim lacks merit.

## II

The defendant's final claim is that the trial court violated his right to be informed of the charges against him under the sixth amendment to the United States constitution[10] by finding him guilty of violating § 53-21 (a) (1) under the situation prong when the state had alleged only a violation of the act prong. The state contends, in response, that the trial court's oral decision should be read as finding the defendant guilty, as charged, under the act prong. In the alternative, the state suggests that any variance between the charging document and the trial court's findings was harmless. For the reasons that follow, we agree with the defendant

that the trial court committed reversible error by finding him guilty of risk of injury to a child based on its application of the elements of the situation prong rather than of the act prong, as originally charged.

The following additional facts are relevant to our consideration of this claim. The information contains four identical counts alleging risk of injury to a child, each of which provides: "The undersigned assistant state's attorney accuses [the defendant] of the crime of risk of injury to a child in violation of . . . § 53-21 (a) (1) and allege[s] that, on or about February 24, 2018, in the vicinity of 14-16 Brook Street in the city of Hartford, Connecticut, [the defendant] did an *act likely to impair the health and morals of a child.*" (Emphasis added.) Although not specified in the pleadings, it is undisputed that these four counts relate, respectively, to the four children who were inside of the second floor apartment when the fire was set.

The trial court made the following specific findings in relation to these charges: "The fourth, fifth, sixth, and seven[th] counts [of the operative information] charge the defendant with risk of injury to a child. The state has proven the elements of each of these counts beyond a reasonable doubt, and a guilty verdict will enter as [to] each . . . . It is proven beyond a reasonable doubt that there were four children under the age of sixteen present at the time of the fire . . . [t]hat the defendant intended to cause the fire, and had reckless disregard for the consequences to the children. The fire was inten[se], spread fast, produced a major amount of smoke, which moved close to the ground, and required each adult and child present to be evacuated quickly. *The court finds it proven beyond a reasonable doubt that the defendant unlawfully placed each child in a situation adverse to the child's physical, including psychological welfare, which situation was likely to injure the child's physical health, and that each child was under the age of sixteen years old.*" (Emphasis added.)

The defendant, conceding that the issue was unpreserved at trial, seeks review of his sixth amendment notice claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of a constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) Id.; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)

(modifying third prong of *Golding*). The state's pleadings and the trial court's oral findings render the record adequate for review of the defendant's claim, and the state implicitly concedes that the issue is of constitutional magnitude.[11]

The principles of law governing our analysis of this issue are well established. "The function of an accusatory pleading such as an information is to inform a defendant of 'the nature and cause of the accusation' as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I § 8." *State* v. *Carter*, 189 Conn. 631, 646, 458 A.2d 379 (1983). "Once such a bill of particulars has been filed or whe[n] . . . the information is sufficiently precise that no bill of particulars is needed, the state is limited to proving that the defendant has committed the offense in substantially the manner described." *State* v. *Ruiz*, 171 Conn. 264, 270, 368 A.2d 222 (1976). We have long recognized that the application of this general maxim to our risk of injury statute requires the conclusion that, when the operative information against a criminal defendant charges either the act or the situation prong alone, a consideration of the uncharged portion of the statute is improper. See *State* v. *Padua*, supra, 273 Conn. 148; see also, e.g., *State* v. *Newton*, 8 Conn. App. 528, 530–32, 513 A.2d 1261 (1986) (trial court's inclusion of instructions relating to uncharged portion of § 53-21 implicated defendant's constitutional right to notice of accusations against him).[12]

Because the parties agree that the fourth, fifth, sixth, and seventh counts of the information are properly read as alleging violations under the act prong of § 53-21 (a) (1), the question of whether a variance exists between the pleadings and the conviction in this case necessarily turns on a comparison of the trial court's factual findings to the various elements required to prove the crime of risk of injury to a child.

General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ." This statutory provision "proscribe[s] two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical [well-being]." (Citation omitted.) *State* v. *Dennis*, supra, 150 Conn. 250.

A conviction under the act prong of § 53-21 (a) (1) requires the state to prove that the defendant, "with the general intent to do so, committed (1) an act (2) likely to impair the morals or health (3) of a child under the age of sixteen." (Internal quotation marks omitted.) *State* v. *Tinsley*, 340 Conn. 425, 444, 264 A.3d 560 (2021); see also *State* v. *McClary*, supra, 207 Conn. 240 (intent required is only general intent to do act; no specific intent to harm child is required). By contrast, in order to obtain a conviction under the situation prong of § 53-21 (a) (1), the state must prove that (1) the defendant wilfully or unlawfully caused or permitted the child to be placed in a situation, (2) the situation endangered the child's life or limb, was likely to injure the child's health, or was likely to impair the child's morals, and (3) the child was under sixteen years of age at the time of the incident. See *State* v. *Maurice M.*, supra, 303 Conn. 27–28; *State* v. *Burton*, supra, 258 Conn. 162–63.

The trial court's finding of guilt relating to the risk of injury counts in this case was specific: "The court finds it proven beyond a reasonable doubt that the defendant unlawfully placed each child in a situation adverse to the child's physical, including psychological welfare, which situation was likely to injure the child's physical health, and that each child was under the age of sixteen years old." This finding tracks the elements of and the language of the situation prong. By finding that the defendant had "*placed each child in a situation . . . likely to injure the child's physical health*," the trial court based its analysis and finding of guilt on the elements of the situation prong. (Emphasis added.)

Although the trial court also found, on a broader level, that "the defendant intended to cause the fire and had reckless disregard for the consequences to the children," such findings alone do not establish that the court was applying and making findings under the elements of the act prong. Cf. *State* v. *James E.*, 327 Conn. 212, 223, 173 A.3d 380 (2017) (concluding that similar findings such as " 'the intent to do some act coupled with a reckless disregard of the consequences' " were sufficient to establish violation of situation prong); see also *State* v. *Sorabella*, 277 Conn. 155, 172–73, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006). The language employed by the trial court in rendering its decision, thus, persuades us to agree with the defendant's assertion that he was ultimately convicted under the situation prong of § 53-21 (a) (1) and not under the act prong, as charged in the operative information. Although the trial court might also have found the defendant guilty under the act prong had it applied the correct elements, that possibility alone is insufficient to warrant affirmance. See, e.g., *State* v. *Belton*, 190 Conn. 496, 504, 461 A.2d 973 (1983) ("appellate courts are not free to revise the basis on which a defendant is convicted simply because the same

result would likely obtain on retrial" (internal quotation marks omitted)).

The state, citing *State* v. *Franko*, 199 Conn. 481, 508 A.2d 22 (1986), urges us to conclude that any such variance between the information and judgment was harmless. That case, however, is distinguishable. In *Franko*, the trial court provided instructions to the jury that referenced both charged and uncharged portions of the statute proscribing sexual assault in the first degree, General Statutes § 53a-70 (a), and the jury subsequently returned a general verdict finding the defendant guilty of that particular offense. Id., 488. This is not a case in which the trial court considered the elements of both prongs and rendered a general finding of guilt. This appeal arises, instead, out of the trial court's express consideration and exclusive application of the elements required for a conviction under an uncharged portion of our risk of injury statute. Dismissing this form of constructive amendment as mere harmless error would effectively allow the state to secure a conviction under either prong of the risk of injury statute, regardless of the manner in which it initially chose to allege that the offense was committed. Such a result would violate basic notions of due process. The defendant in this case was undisputedly entitled to notice of the manner by which the state claimed that he committed the offense and of the trial court's determination of whether the state had proven the elements of that offense as charged. The trial court's express application of the uncharged portion of § 53-21 (a) (1) was in error, and the defendant is entitled to a new trial on the charges brought under that statute.[13]

The judgment is reversed with respect to the four counts of risk of injury to a child and the case is remanded for a new trial on those counts; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Justices McDonald, D'Auria, Mullins, Kahn and Ecker. Although Justice Kahn was not present at oral argument, she has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] Because the defendant initially indicated his intent to appeal from the trial court's judgment of conviction with respect to all counts, and because the crime of arson in the first degree is designated by our legislature as a class A felony; see General Statutes § 53a-111 (b); that appeal was initially docketed in this court pursuant to General Statutes § 51-199 (b) (3). The defendant, however, subsequently briefed only claims of error relating to the counts of risk of injury to a child in violation of § 53-21 (a) (1), a class C felony subject to punishment by a term of imprisonment of not less than one year and not more than ten years. See General Statutes § 53a-35a (7); see also *State* v. *Lopez*, 341 Conn. 793, 795, 268 A.3d 67 (2022). We exercise our discretion to retain jurisdiction over the present appeal for the purpose of judicial economy.

[2] Although the source of the fire was vigorously contested at trial, the defendant raises no claims of error with respect to his conviction of arson in the first degree. See footnote 1 of this opinion.

[3] Herrmann testified that he had "never felt such heat before" and that the fire had been so intense that his boots started to melt on an exterior metal fire escape he used to help evacuate a third floor resident.

[4] Three of those children lived with Danny Rosa, their father, inside the second floor apartment. The fourth, Danny Rosa's stepchild, routinely visited on weekends.

[5] The trial court acquitted the defendant on the charge of criminal mischief in the first degree because it concluded that the state had failed to adequately prove the monetary value of the damages caused by the fire. The trial court's finding in this regard is not at issue in the present appeal.

[6] At sentencing, the court vacated the defendant's conviction as to one count of arson in the first degree pursuant to *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013).

[7] The gloss placed on the act prong of our risk of injury statute in *Schriver* was later included as part of our state's model criminal jury instructions. Connecticut Criminal Jury Instructions 6.11-2, available at http://www.jud.ct-.gov/JI/Criminal/Criminal.pdf (last visited November 8, 2022) ("[t]o be likely to impair the health of a minor, the statute requires that the defendant committed blatant physical abuse that endangered the child's physical well-being").

[8] Because the operative information charged the defendant in *Schriver* with a violation of the act prong, we confined our own vagueness analysis to a consideration of that specific statutory provision. *State* v. *Schriver*, supra, 207 Conn. 467. We noted, however, that the state could have "elect[ed] to prosecute [the defendant] under the first part of § 53-21, which proscribes the 'deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . .' " Id.

[9] The defendant's insufficiency claim is unpreserved but is nonetheless reviewable. See, e.g., *State* v. *Revels*, 313 Conn. 762, 777, 99 A.3d 1130 (2014), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

[10] The sixth amendment right to notice is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. *Faretta* v. *California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[11] The state makes no claim that the defendant acquiesced to the trial court's application of the situation prong. See *State* v. *McClain*, 324 Conn. 802, 809, 155 A.3d 209 (2017) ("Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]" (internal quotation marks omitted)).

[12] This restraint arises from the nature of the state's pleadings and not, as the defendant suggests in his brief, from a separation of the act and situation prongs into entirely distinct crimes. Although the two prongs of § 53-21 (a) (1) derive from previously separate legislative enactments, precedent indicates that they "describe alternative means of committing a single crime." *State* v. *Tanzella*, 226 Conn. 601, 612, 628 A.2d 973 (1993); see also *State* v. *Sullivan*, 11 Conn. App. 80, 88, 525 A.2d 1353 (1987) (defendant's sixth amendment right to notice was not violated by state's amendment of operative pleadings to charge violation of act prong in addition to violation of situation prong initially alleged because "[t]he original and the amended informations both charged the defendant with the same crime . . . namely risk of injury to a minor" (citation omitted)).

[13] The defendant asserts that he is entitled to a judgment of acquittal, citing *State* v. *Martin*, 187 Conn. 216, 222, 445 A.2d 585 (1982), and *State* v. *Kristy*, 11 Conn. App. 473, 484, 528 A.2d 390, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987). The defendants in those cases, however, were acquitted by a jury of the offense initially charged. See *State* v. *Martin*, supra, 217; *State* v. *Kristy*, supra, 484. The fact that the trial court, in this case, never acquitted the defendant of risk of injury to a child renders both *Martin* and *Kirsty* distinguishable.

In the present case, the trial court found the defendant guilty of risk of injury to a child by relying on elements of an uncharged prong of that same offense. There was no express or implied finding that the defendant was not guilty under either prong. Reduced to its essence, the claim now before us is that the trial court's erroneous application of the situation prong "deprived [the defendant] of a fair trial." The proper remedy for such a claim is, of course, a new trial free from that error. See, e.g., *State* v. *Salgado*, 257 Conn. 394, 408 n.12, 778 A.2d 24 (2001) ("[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through

a judicial process [that] is defective in some fundamental respect . . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for [ensuring] that the guilty are punished." (Internal quotation marks omitted.)); see also *North Carolina* v. *Pearce*, 395 U.S. 711, 719–20, 89 S. Ct. 2072, 223 L. Ed. 2d 656 (1969) ("At least since 1896 . . . it has been settled that [the double jeopardy clause] imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside. The principle that this provision does not preclude the [g]overnment's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a [well established] part of our constitutional jurisprudence." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.)), overruled in part on other grounds by *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

---